UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00604-TBR

WILLIAM R. ELLS,   PLAINTIFF

v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,   DEFENDANT

**MEMORANDUM OPINION**

William R. Ells brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner of Social Security's decision to deny his application for supplemental security income. The Court referred this matter to a Magistrate Judge, who filed a Report and Recommendation in which he recommended that the Court affirm the Commissioner's decision and dismiss Ells's complaint. [DN 16.] As is his right, Ells filed an objection to the Magistrate Judge's report. [DN 17]. Having reviewed the Administrative Record, the parties' submissions, and the applicable law, the Court will **OVERRULE** Ells's objection and **ADOPT** the Magistrate Judge's recommendation that the Commissioner's decision be affirmed. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

Ells filed his application for supplemental security income ("SSI") benefits on May 22, 2013 "alleg[ing] disability due to a herniated lumbar disc at L4-5 with degenerative disc disease, osteoarthritis of both knees, mild mental retardation and an affective/mood disorder." [DN 12 at 2 (Ells's Fact and Law Summary).] After his application was denied and denied again on reconsideration, Ells "requested a hearing that was held on April 9, 2015 before Administrative

1

Law Judge ("ALJ") Candace A. McDaniel." [*Id.*] The ALJ rendered her decision on July 29, 2015, in which she denied Ells's claim for SSI benefits. [*Id.*] The Appeals Council denied Ells's request for review of the ALJ's decision. [*Id.*] Thereafter, Ells filed suit in this Court to obtain judicial review of the denial of SSI benefits. As the Magistrate Judge explained in his report, Ells argues in this suit that the ALJ made three errors: "First, he argues that the ALJ mistakenly concluded that he did not meet Listing 12.05C for an intellectual disability." [DN 16 at 5.] Next, Ells "claims that the ALJ erred in her RFC analysis when she determined that he was capable of performing light work." [*Id.*] Finally, "Ells argues that he was denied due process at his administrative hearing when the ALJ allegedly failed to inform him of his right to counsel and the benefits having counsel would have." [*Id.*]

STANDARD

It is well-settled that the Court reviews the objected-to portions of a report and recommendation *de novo*. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Its review of the Commissioner's determination is, of course, more deferential. *See* 42 U.S.C. § 405(g); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The scope of that inquiry is limited to (1) "whether the findings of the ALJ are supported by substantial evidence" and (2) "whether the ALJ applied the correct legal standards." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 405–06). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Even if supported by substantial evidence, however, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

DISCUSSION

In his Report and Recommendation, the Magistrate Judge rejected all three of Ells's arguments as to why the ALJ erred below. [*See* DN 16.] In his objection, with regard to his first two arguments, Ells states that he "objects to the Magistrate's findings in regard to [his] two initial arguments, for the reasons stated in his Fact and Law Summary and will not repeat here." [DN 17 at 1.] These are not proper objections, however. The Sixth Circuit has made clear that "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991)); *see also United States v. Gwathney-Law*, No. 1:15-CR-00030-GNS, 2017 WL 1128643, at *1 (W.D. Ky. Mar. 24, 2017) ("[Defendant]'s general objection is the same as no objection.").

This is because the objecting party has a "duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (citing *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. 1982)). In the same vein, an "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017). Therefore, Ells's general objection and reference back to the arguments already made in his Fact and Law Summary are insufficient

to qualify as an objection. Therefore, the Court will not conduct a de novo review of the Magistrate Judge's report with regard to Ells's first two arguments.

However, Ells does make a proper objection with regard to the Magistrate Judge's rejection of his third argument, that Ells's "lack of representation at his hearing denied him due process." [DN 17 at 1–5.] Therefore, the Court will review this objection to the Magistrate Judge's report using a de novo standard.

"When a claimant is not represented by counsel, an administrative law judge has a special duty to ensure that the record is fully and fairly developed." *Johnson v. Comm'r of Soc. Sec.*, 97 F. App'x 539, 542 (6th Cir. 2004) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)). "Part of the administrative law judge's duty in this regard is to ensure that the claimant is aware of his or her right to legal representation." *Id.* (citing *Robinson v. Sec'y of Health & Human Servs.*, 733 F.2d 255, 257 (2d Cir. 1984)).

The Magistrate Judge found that Ells voluntarily waived his right to representation, that he was not unable to effectively present his case, and that there was no evidence to suggest that Ells did not understand the nature of the hearing or could not participate effectively. [DN 16 at 13–14.] In his objection, Ells argues that both the Commissioner and the Magistrate Judge made certain "assertions in regard to this argument . . . [that] are not only unreasonable, but seem to be based on pure speculation." [DN 17 at 2.] First, Ells contends that the Magistrate Judge made unwarranted factual inferences about the exchange between Ells and the ALJ at the hearing. That exchange went as follows:

> ALJ: So, we're here today, okay. Now, currently, you do not have a representative. Is that right?
> CLMT: No, ma'am.

4

> ALJ: Okay, and do you have the papers that Lynette gave to you? Let me double check. Okay. And then you want to go ahead with the hearing today?
>
> CLMT: Yes.
>
> ALJ: Okay, and you received our papers about different places to contact?
>
> CLMT: Yeah.
>
> ALJ: Did you make any attempt to do so?
>
> CLMT: I didn't. She did.
>
> ALJ: Okay, and it just didn't work out?
>
> CLMT: No.
>
> ALJ: Okay, okay.

[DN 10-2 at 36–37 (Hearing Transcript).] After reviewing this exchange, the Magistrate Judge found that

> [t]he hearing transcript indicates that the ALJ confirmed that Ells did not have counsel, and then immediately after, confirmed that he received "papers about different places to contact." (DN 10-2, #74–75.) Ells then stated that while he did not make "any attempt" to contact the "places," "she" did. (*Id.* at #75.) From this exchange, the undersigned can infer that the "papers" referred to organizations or individuals from which Ells could have obtained legal representation. Additionally, the "she" in the conversations appears to be Lynette Lang, a person who the Commissioner speculates works in the ALJ's office. (*Id.* at 75–76; DN 15, #478.) According to Ells's testimony, Ms. Lang contacted the organizations on Ells's behalf, but for some reason, he was unable to obtain representation. (DN 10-2, #75.) During the same exchange, Ells told the ALJ that he wanted to proceed with the hearing despite not having counsel. (*Id.*) Even though Ells is illiterate, it is clear that he had adequate notice of his right to legal representation; in fact, the ALJ went beyond what she was required to do when one of her employees, Ms. Lang, placed Ells in contact with possible representation.

[DN 16 at 13–14.]

According to Ells, it was improper for the Magistrate Judge to infer that the "papers" referred to legal representation information and that "she" was Lynette Lang. [DN 17 at 3.] Ells

5

also contends that the Magistrate Judge should have inquired as to why any such attempts to contact legal representation "didn't work out." [*Id.*] Moreover, Ells contends that, because he is illiterate (which the parties do not dispute), any written notice that may have been provided was clearly insufficient. [*Id.*] Ells argues that "[t]he ALJ should have gone over the answers given by check marks in the form to satisfy herself that the plaintiff was knowingly and willingly waiving his right to representation" and that, "[a]t a minimum, most judges will explain to a claimant, particularly one as unsophisticated as Mr. Ells, that an attorney can be helpful to them in presenting their case and offer to continue their hearing in order to give the claimant time to obtain a representative." [*Id.* at 4.]

The Court disagrees that so much was required of the ALJ. Indeed, the ALJ had the duty "to ensure that the claimant [wa]s aware of his . . . right to legal representation." *Johnson*, 97 F. App'x at 542. However, the Court agrees with the Magistrate Judge's assessment of the transcript excerpt and does not find that he made improper inferences. Immediately after confirming that Ells was unrepresented, the ALJ asked "Okay, and do you have the papers that Lynette gave to you?". [DN 10-2 at 37.] She also asked, "And then you want to go ahead with the hearing today?", to which Ells responded "Yes." [*Id.*] Ells also confirmed that he "received [the] papers about different places to contact," and when asked if he attempted to contact anyone, he stated "I didn't. She did." [*Id.*] The Court agrees with the Magistrate Judge that it is logical to infer that the "papers" about places to contact referred to legal representation, as the discussion of those papers followed immediately after confirming that Ells was unrepresented at the hearing and that he wished to proceed that day regardless.

Even if it is unclear who the "she" is, the fact that Ells acknowledged that he had received papers with apparent legal contact information and that someone had tried to contact legal

6

representation on his behalf indicates that he was aware he had this right. When the ALJ asked "and it just didn't work out?", Ells responded "No." [*Id.*] He did not request additional time to obtain legal representation, nor did he explain any issue he may have had with obtaining such representation. [*See id.*] Similarly, in *Duncan v. Secretary of Health & Human Services*, the Sixth Circuit found that the claimant had been adequately informed of his right to representation, explaining:

> At the hearing, the ALJ specifically asked Duncan if he had received the notice sent by the Secretary which informed him of his right to be represented by an attorney at the hearing. Duncan acknowledged that he had indeed received such a notice. Duncan also stated that he wanted to proceed with the hearing, even though he was not represented by counsel. From this it is clear that Duncan was aware of his right to counsel and that he voluntarily waived that right. Under these circumstances, the ALJ had no further duty to discuss Duncan's right to representation. The ALJ acted properly in being satisfied that Duncan was informed of his right.

*Duncan*, 801 F.2d at 855. This is highly analogous to the factual situation at issue in this case. Although Ells is illiterate, he nonetheless confirmed that he did receive papers about places he could contact to obtain legal representation. [DN 10-2 at 37.] Ells, like the claimant in Duncan, stated that he wanted to proceed with the hearing that day. Additionally, the ALJ asked Ells whether he had contacted anyone, and he stated that "she" did, but that it did not work out. This is further evidence that Ells was aware that he had the right to have legal representation, and may have even attempted to exercise that right, but that he nonetheless wished to proceed without it.

Moreover, the Court agrees with the Magistrate Judge that "the ALJ had no duty to inform [Ells] about the benefits of having legal representation." [DN 16 at 14.] As the *Duncan* court explained, once an ALJ is satisfied that a claimant is aware of his right to representation and is voluntarily electing to proceed without it, "the ALJ ha[s] no further duty to discuss [the claimant's] right to representation." *Duncan*, 801 F.2d at 855.

Next, though Ells disputes the Magistrate Judge's determinations that Ells was not incapable of presenting an effective case and there was no evidence that he did not understand the hearing procedures, he does not point to any alleged inadequacies in the hearing to support these points. [*See* DN 17 at 4–5.] As the Magistrate Judge pointed out, Ells was able to answer all of the ALJ's questions and there is no indication that he did not understand them or that he answered any questions erroneously. [DN 16 at 14.] In his objection, Ells does not discuss any issues that the ALJ should have more fully developed, or that would have been more fully developed with the assistance of legal representation. [*See id.*] Nor does Ells assert that he would have answered any questions differently had counsel been present with him at the hearing.

The only thing Ells does specifically mention is that an attorney would likely have cross-examined the vocational expert who testified at the hearing, and argues that it is not clear that Ells was aware that he had the right to do so. [*Id.* at 5.] However, Ells does not mention any testimony given by the vocational expert that he alleges was erroneous and that an attorney would have developed on cross-examination. Merely asserting that an attorney *could* have conducted cross-examination, without making any argument as to why cross-examination would have been necessary or helpful in Ells's case, does not convince the Court that Ells was unable to present an effective case without counsel. *See Duncan*, 801 F.2d at 856 ("Duncan has not suggested, and we are unable to determine, what possible further information could have been brought forth at the hearing which would have enhanced a determination of disability."). In sum, the Court agrees with the Magistrate Judge that Ells "was aware of his right to counsel and that he voluntarily waived that right." *Id.* at 855.

Finally, the Court also finds that the ALJ carried out her duty of "ensur[ing] that the record [wa]s fully and fairly developed" at Ells's hearing. *Johnson*, 97 F. App'x at 542. The ALJ

questioned Ells in detail about his age, educational background, medical history, and work history. [*See* DN 10-2.] She asked him about what jobs he has been able to perform in the past, how he got paid, why he stopped, and what he activities is able to do on a normal day. [*Id.*] Ells has not argued that the ALJ erroneously, incompletely, or unfairly developed the record, or that any vital facts were glossed over or not addressed. Though the Court acknowledges that Ells is "an illiterate man with an 8th grade education," [DN 17 at 4], the Court does not find that his due process rights were violated due to his lack of representation at the administrative hearing. As the Sixth Circuit explained in *Duncan*, "even though we scrutinize with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal." *Duncan*, 801 F.2d at 856 (citing *Holden v. Califano,* 641 F.2d 405, 408 (6th Cir. 1981). In such situations, "[r]ather, we examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Id.* Having done so in this case and being satisfied that Ells's lack of representation did not deny him a full and fair hearing, the Court will overrule Ells's objection to the Magistrate Judge's Report and Recommendation.

## CONCLUSION

Having "ma[d]e a de novo determination of those portions of the report . . . to which objection is made," 28 U.S.C. § 636(b)(1), the Court finds as follows:

(1) Ells's objection, [DN 17], is **OVERRULED**.

(2) The Magistrate Judge's Report and Recommendation, [DN 16], is **ADOPTED**.

(3) The decision of the Commissioner of Social Security is **AFFIRMED**.

All claims in the above-captioned action shall be **DISMISSED WITH PREJUDICE**, and the Clerk is directed to close the case. There being no just cause for delay, this is a final and appealable order.

**IT IS SO ORDERED**.

Date:

cc: Counsel